## Appeal of UNITED STATES TRUST CO.     Docket No. 1260.

Where a corporate taxpayer purchased all of the stock of another corporation and took over the assets and business thereof after the acquisition of the stock, *held* that under the Revenue Act of 1918 the transaction resulted in an affiliation of the two corporations, and that no deductible loss resulted therefrom.

Submitted February 11, 1925; decided March 25, 1925.

*James J. O'Byrne, Esq.*, and *James F. Welch, C. P. A.*, for the taxpayer.

*A. Calder Mackay, Esq.*, for the Commissioner.

Before GRAUPNER, LANSDON, LITTLETON, and SMITH.

This appeal involves income and profits taxes in the amount of $1,617.96 for the calendar year 1918. From the evidence, both oral and documentary, introduced at the hearing, the Board makes the following

### FINDINGS OF FACT.

1. The taxpayer is a corporation organized under the laws of New Jersey, with its principal place of business in the city of Paterson, in that State. It is, and during the year 1918 was, engaged in the business of banking.

2. During the latter part of 1917 the taxpayer found it necessary to obtain larger quarters for its business. It purchased a lot and had plans drawn for a new building, when its attention was directed to the possibility of acquiring control of a competitor, the Silk City Safe Deposit & Trust Co., hereinafter called the Company. The Company had a good reputation and owned a desirable building across the street from the site which the taxpayer had purchased for a new building; its treasurer had resigned, and a few of its stockholders were desirous of seeing a change in control. At the instigation of some of the stockholders of the Company, and relying upon a published statement as to assets and liabilities of the Company, the taxpayer, without examining the books or investigating the finances, determined to purchase all of the outstanding stock of the Company and take over its business and assets. The Company had issued 2,000 shares of its capital stock, which had a par value of $100 per share. The published statement of assets and liabilities, upon which the taxpayer relied, indicated an actual value of $210, and it determined to pay this amount per share for the stock of the Company.

3. The members of the board of finance of the taxpayer were designated to handle the transaction. These members signed a note to and established an account with the taxpayer in the name of one of its members and in the amount of $420,000, and designated the member in whose name the account was opened to represent them and the taxpayer in acquiring the stock. Some of the stockholders of the Company solicited options on the stock from their fellow stockholders. These options were delivered to the representative of the taxpayer and were paid for by the taxpayer, from the account established by the representative of its board of finance, as and when the certificates of stock called for in the options were brought in. It required all of January and February and the better part of March, 1918, to complete the purchase of the entire 2,000 shares of stock of the Company. For these shares it paid $420,000, the amount allotted to the members of its board of finance.

4. The last of the outstanding stock of the Company was acquired for the taxpayer sometime during the latter part of March, 1918. Until that time the taxpayer had no direct dealing with the Company and had no access to its books to determine the actual financial condition of the Company. It had dealt entirely with individual stockholders and, impelled by a desire to acquire better accommodations for its business, which the Company's property afforded, as well as to obtain the business of a competitor, which it believed to be worth more than the financial statement indicated, had paid a price per share which it had believed to be advantageous to the taxpayer.

5. After the purchase of all the issued capital stock of the Company, designated stockholders of the taxpayer became directors and officers of the Company and, acting for the taxpayer, took over the management and control thereof. By resolution of its board of directors, composed of stockholders of the taxpayer, the tangible assets of the Company, including the bank building, were sold to the taxpayer for the sum of $361,648.83, which was the value at

which they were carried on the books of the Company. The taxpayer assumed all the liabilities and contractual obligations of the Company and entered the newly acquired assets on its books as of the same value at which they were carried by the Company. It took over and carried on the business of the Company at its original premises, until the building formerly occupied by the Company was remodeled to suit the purposes of the taxpayer. It also retained several of the former employees of the Company. The $361,648.83 was paid by check to the order of " Silk City Trust Co.'s Stockholders," dated March 30, 1918. This check was endorsed by the stockholders of the Company, who were also stockholders and agents of the taxpayer, and turned back to the taxpayer on April 1, 1918.

6. On April 1, 1918, the taxpayer made concurrent entries in its journal to cover the transaction. The extract from the journal shows as follows:

Bills purchased (demand):

| | | |
|---|---|---|
| #55347 C. W. Bensen spec. | $50,000.00 | |
| #55285 C. W. Bensen spec. | 50,000.00 | |
| #55325 C. W. Bensen spec. | 100,000.00 | |
| #55305 C. W. Bensen spec. | 100,000.00 | |
| #55378 C. W. Bensen spec. | 50,000.00 | |
| #55290 C. W. Bensen spec. | 50,000.00 | |
| #55459 C. W. Bensen spec. | 20,000.00 | |
| | | $420,000.00 |
| Capital stock premium a/c: | | |
| Premium paid on Silk City stock bought at $210 for $100 par Cap. S. & U. P. | 361,648.83 | |
| P'd for | 420,000.00 | |
| | | 58,351.17 |
| Treas. ck. Silk City Trust Co. stockholders | | 361,648.83 |

7. After the acquisition of the assets of the Company by the taxpayer, the Company was liquidated, and the taxpayer surrendered the 2,000 shares of stock purchased by it and had returned to it, as sole stockholder, the $361,648.83, which constituted all of the assets of the Company. The difference between the $420,000 the taxpayer had paid in acquiring the shares of stock and the amount of $361,648.83 received by it upon liquidation of the Company, amounting to $58,351.17, was charged off the books of the taxpayer, as shown hereinabove in paragraph 6.

8. The taxpayer did not claim the $58,351.17 as a loss in its original income-tax return for 1918. However, an amended return was filed later, in which the taxpayer sought to deduct the amount as a loss on the stock of the Company. The Commissioner denied the claim, and from the deficiency determined thereon this appeal was filed.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

GRAUPNER: The taxpayer contends that the situation presented for our consideration is a simple one, consisting only of a purchase of

shares of stock for cash, the receipt of a less amount upon surrender of the stock, and a consequent deductible loss. The transaction thus presented is so simple that it is confounding.

Before March 30, 1918, the taxpayer owned directly, or controlled, all of the stock of the Company, and, therefore, the Company was an affiliated subsidiary of the taxpayer. The liquidation of the Company did not in any way produce a loss which the taxpayer would be allowed to deduct under section 234 (a) of the Revenue Act of 1918.